[Computer search warrant 2.2012]

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

# 12 M 626

- - - - - - - - - - - - - - -X

IN THE MATTER OF AN APPLICATION FOR
SEARCH WARRANTS FOR:

THE PREMISES KNOWN AND DESCRIBED AS
ONE GRAY APPLE LAPTOP COMPUTER
INVENTORIED UNDER NYPD PROPERTY
CLERK INVOICE NO. 3000087136 AND
UNDER PETS NO. 1300075768

THE PREMISES KNOWN AND DESCRIBED AS
ONE BLACK ASPIRE MODEL 5551 SERIES
ACER LAPTOP COMPUTER, SERIAL NO.
LXPWK0211102436D301601

- - - - - - - - - - - - - - - -X

AFFIDAVIT IN SUPPORT OF
APPLICATION FOR SEARCH
WARRANTS_____

EASTERN DISTRICT OF NEW YORK, SS:

Brian Conolly, being duly sworn, deposes and states
that he is a Special Agent with the Federal Bureau of
Invesitgation, duly appointed according to law and acting as
such.

Upon information and belief, there is probable cause to
believe that there is located in (1) THE PREMISES KNOWN AND
DESCRIBED AS ONE GRAY APPLE LAPTOP COMPUTER INVENTORIED UNDER
NYPD PROPERTY CLERK INVOICE NO. 3000087136 AND UNDER PETS NO.
1300075768 ("PREMISES 1") and (2) THE PREMISES KNOWN AND
DESCRIBED AS ONE BLACK ASPIRE MODEL 5551 SERIES ACER LAPTOP
COMPUTER, SERIAL NO. LXPWK0211102436D301601 ("PREMISES 2"), for
the things described in the Attachment, which constitute

1

evidence, fruits and instrumentalities of sex trafficking, Mann Act violations and promotion of prostitution, contrary to Title 18, United States Code Sections, 1591, 2421, 2423 and 1952, respectively.

The source of your deponent's information and the grounds for his belief are as follows:[1]

1.     I am a Special Agent with the Federal Bureau of Investigation ("FBI").  I have been employed by the FBI for eight years.  I am responsible for conducting and assisting in investigations into the activities of individuals and criminal groups responsible for the sexual exploitation of children.  As a result of my training and experience, I am familiar with the techniques and methods of operation used by individuals involved in the sexual exploitation of children, including the use of computers and other electronic devices and the Internet, to carry out and conceal their criminal activities.

2.     I have personally participated in the investigation of the offenses discussed below.  I am familiar with the facts and circumstances of this investigation from: (a) my personal participation in this investigation, (b) reports

---

[1] Because this affidavit is submitted for the limited purpose of establishing probable cause for two search warrants, I have not set forth each and every fact learned during the course of the investigation.

2

made to me by other law enforcement authorities, (c) interviews
with witnesses and victims, and (d) review of surveillance videos
and other records and reports.

I.    BACKGROUND

3.    The FBI and New York City Police Department
("NYPD") are jointly investigating the prostitution-related
activities of Brooklyn resident Kylon Lashley (the "Target"),
including the alleged sex trafficking of a 16-year-old female
from Georgia in June 2012.

II.   TECHNICAL TERMS

4.    Based on my training and experience, I use the
following technical terms to convey the following meanings:

a.    IP Address: The Internet Protocol address (or
simply "IP address") is a unique numeric address used by
computers on the Internet.  An IP address looks like a series of
four numbers, each in the range 0-255, separated by periods
(e.g., 121.56.97.178).  Every computer attached to the Internet
computer must be assigned an IP address so that Internet traffic
sent from and directed to that computer may be directed properly
from its source to its destination.  Most Internet service
providers control a range of IP addresses.  Some computers have
static-that is, long-term-IP addresses, while other computers
have dynamic-that is, frequently changed-IP addresses.

b.    Internet: The Internet is a global network of

3

computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

III. <u>THE PREMISES</u>

5. On or about June 20, 2012, NYPD officers arrested the Target for gun possession, along with two adult women known as "Angel" and "Bunny." At the time of his arrest, the Target was in possession of PREMISES 1, which was inventoried by the NYPD under NYPD Property Clerk Invoice No. 3000087136 and PETS No. 1300075768, and is currently located in the NYPD property storage facility in Queens, New York.

6. On or about June 21, 2012, NYPD officers recovered the alleged sex trafficking victim ("Jane Doe") from a hotel room in Brooklyn, New York.

7. On or about and between June 21, 2012 and July 1, 2012, FBI agents interviewed the woman identified as "Angel" and Jane Doe each separately on several occasions.

8. During these interviews, Jane Doe reported, in part and substance:

a. She resides with her family in Georgia.

b. One or two weeks ago, she was in Savannah, Georgia at the beach with a friend. While there, she met a man

4

who introduced himself as "Cash" (who was later identified as the
Target).  Jane Doe agreed to hang out with the Target and
accompanied him to his car.  Two other females, who were
introduced to Jane Doe as "Bunny" and "Angel," were inside the
vehicle.  Although Jane Doe thought that they were going to
remain at the beach, the Target began driving away from the beach
area.  While driving, the Target took Jane Doe's cell phone and
told her that she had to make money for him and could not leave.

        c.    The Target eventually drove Jane Doe and the
two women to a hotel in Brooklyn, New York.  Over the course of
several days, the Target forced Jane Doe to engage in
prostitution.

        d.    On two separate occasions during that time,
the Target took Jane Doe, "Angel" and "Bunny" to two other hotels
in Brooklyn to work in prostitution.

        e.    One afternoon, the Target left the hotel with
"Angel" and "Bunny", and did not return, leaving Jane Doe alone
in the hotel room.  After a number of hours, Jane Doe called 911,
after which the police recovered her.

        f.    The Target advertised Jane Doe on the
Internet, and told her that she would be advertised as a 22-year-
old, even though Jane Doe told the Target that she was 16.  Jane
Doe saw on PREMISES 1 a prostitution advertisement for her that
the Target had posted on Backpage.com.

5

9.   During interviews of "Angel," she stated, in part and substance:

a.   At the time of her arrest with the Target and "Bunny," she, "Bunny" and Jane Doe were all working as prostitutes for the Target at the hotel in Brooklyn where Jane Doe was recovered by NYPD officers.  The Target had met Jane Doe about a week earlier in a Brooklyn hotel where Jane Doe was already engaged in prostitution for another pimp.[2]  The Target and "Bunny" recruited Jane Doe to work for the Target.

b.   PREMISES 1 was the Target's computer, which the Target and "Bunny" used to post prostitution advertisements for females who worked for the Target.

c.   "Bunny" told "Angel" that she ("Bunny") had been working as a prostitute for the Target for about one and a half years.

d.   "Angel" and the Target each had one other laptop that they used, in part, to carry out prostitution activities.  "Angel's" computer contained ads and images relating to her own prostitution activities prior to working for the Target.  PREMISES 2 is the Target's computer and contained, among other things, photographs of females who had worked for him in prostitution.  Both "Angel's" computer and PREMISES 2 were at a

---

[2]   This statement conflicts with Jane Doe's account of meeting the Target in Georgia and being taken by the Target to New York.

6

computer repair shop at the time of the initial interview of "Angel."

10. On or about June 26, 2012, FBI agents accompanied "Angel" to the repair shop and retrieved her computer and PREMISES 2. Repair shop employees advised that the contents of neither computer had been altered during the repairs. The FBI took possession of PREMISES 2. PREMISES 2 is currently in my possession in Brooklyn.

11. During the investigation, the FBI has confirmed various details of the accounts provided by Jane Doe and "Angel," including reviewing one security videotape that shows Jane Doe with a man who appears to be the Target in one of the Brooklyn hotels identified by Jane Doe and "Angel" as a place where they had stayed with and worked for the Target. The FBI has also confirmed that the Target registered as a guest at both Brooklyn hotels identified by Jane Doe and "Angel." Lastly, the FBI has identified another Brooklyn hotel where the Target registered as a guest on an hourly basis on at least two occasions approximately one year ago.

IV.    TECHNICAL BACKGROUND

12. As described above and in the Attachment, this application seeks permission to search for records that might be found on PREMISES 1 and PREMISES 2, in whatever form they are found.

7

13.  Based on my knowledge, training, and experience, I
know that computer files or remnants of such files can be
recovered months or even years after they have been downloaded
onto a storage medium, deleted, or viewed via the Internet.
Electronic files downloaded to a storage medium can be stored for
years at little or no cost.  Even when files have been deleted,
they can be recovered months or years later using forensic tools.
This is so because when a person "deletes" a file on a computer,
the data contained in the file does not actually disappear;
rather, that data remains on the storage medium until it is
overwritten by new data.

14.  Therefore, deleted files, or remnants of deleted
files, may reside in free space or slack space – that is, in
space on the storage medium that is not currently being used by
an active file – for long periods of time before they are
overwritten.  In addition, a computer's operating system may also
keep a record of deleted data in a "swap" or "recovery" file.

15.  Wholly apart from user-generated files, computer
storage media – in particular, computers' internal hard drives –
contain electronic evidence of how a computer has been used, what
it has been used for, and who has used it.  To give a few
examples, this forensic evidence can take the form of operating
system configurations, artifacts from operating system or
application operation, file system data structures, and virtual

memory "swap" or paging files.  Computer users typically do not erase or delete this evidence, because special software is typically required for that task.  However, it is technically possible to delete this information.

16.  Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

17.  As further described in the Attachment, this application seeks permission to locate not only computer files that might serve as direct evidence of the crimes described on the warrant, but also for forensic electronic evidence that establishes how computers were used, the purpose of their use, who used them, and when.  There is probable cause to believe that this forensic electronic evidence will be on any computer in PREMISES 1 and PREMISES 2 because:

a.  Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).  Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active.  Web browsers, email programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and

9

passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created.

b. Forensic evidence on a computer or storage medium can also indicate who has used or controlled the computer or storage medium. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, registry information, configuration files, user profiles, email, email address books, "chat," instant messaging logs, photographs, the presence or absence of malware, and correspondence (and the data associated with the foregoing, such as file creation and last-accessed dates) may be evidence of who used or controlled the computer or storage medium at a relevant time.

c. A person with appropriate familiarity with how a computer works can, after examining this forensic evidence in its proper context, draw conclusions about how computers were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a storage medium that are necessary to draw an

10

accurate conclusion is a dynamic process.  While it is possible
to specify in advance the records to be sought, computer evidence
is not always data that can be merely reviewed by a review team
and passed along to investigators.  Whether data stored on a
computer is evidence may depend on other information stored on
the computer and the application of knowledge about how a
computer behaves.  Therefore, contextual information necessary to
understand other evidence also falls within the scope of the
warrant.

       e.    Further, in finding evidence of how a
computer was used, the purpose of its use, who used it, and when,
sometimes it is necessary to establish that a particular thing is
not present on a storage medium.  For example, the presence or
absence of counter-forensic programs or anti-virus programs (and
associated data) may be relevant to establishing the user's
intent.

       f.    I know that when an individual uses a
computer to carry out prostitution activities, the individual's
computer will generally serve both as an instrumentality for
committing the crime, and also as a storage medium for evidence
of the crime.  The computer is an instrumentality of the crime
because it is used as a means of committing the criminal offense.
The computer is also likely to be a storage medium for evidence
of crime.  From my training and experience, I believe that a

11

computer used to commit a crime of this type may contain: data that is evidence of how the computer was used; data that was sent or received; notes as to how the criminal conduct was achieved; records of Internet discussions about the crime; and other records that indicate the nature of the offense.

V.      CONCLUSION

        18.  Based on my training and experience, and the facts as set forth in this affidavit, there is probable cause to believe that on PREMISES 1 and PREMISES 2 there exist evidence of crimes.  Accordingly, a search warrant for each PREMISES is requested.

        WHEREFORE, your deponent respectfully requests that the requested search warrants be issued for THE PREMISES KNOWN AND DESCRIBED AS (1) THE PREMISES KNOWN AND DESCRIBED AS ONE GRAY APPLE LAPTOP COMPUTER INVENTORIED UNDER NYPD PROPERTY CLERK INVOICE NO. 3000087136 AND UNDER PETS NO. 1300075768 ("PREMISES 1") and (2) THE PREMISES KNOWN AND DESCRIBED AS ONE BLACK ASPIRE

MODEL 5551 SERIES ACER LAPTOP COMPUTER, SERIAL NO.

LXPWK0211102436D301601 ("PREMISES 2").

Brian Conolly
Special Agent
Federal Bureau of Investigation

Sworn to before me this
__ day of Jul_____

THE
UNI
EAS'        ____ OF NEW YORK

13

## ATTACHMENT

### Particular Things to be Seized

All records[3] relating to violations of Title 18, United States Code, Sections 1591, 2421, 2423 and 1952 and involving Kylon Lashley since January 1, 2011, including:

      a.    Lists of customers and related identifying information;

      b.    Types and prices of sexual services advertised or provided by females working for Kylon Lashley, as well as dates, places, and amounts of specific transactions;

      c.    Any information relating to Kylon Lashley's travel and hotel registration or stays;

      d.    All bank records, checks, credit card bills, account information, ledgers and other financial records;

      e.    All photographs, videotapes and other images of females;

      f.    All photographs, videotapes and other images of a sexual or prurient nature;

---

[3] As used herein, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as hard disks or other media that can store data); any handmade form (such as writing, drawing, painting); any mechanical form (such as printing or typing); and any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, or photocopies).

g.   All photographs, videotapes and other images of Kylon Lashley;

h.   Records relating to any communication with Internet websites, including, but not limited to, Backpage.com and Craiglist.net;

i.   Records relating to postings made to Internet websites, including, but not limited to, Backpage.com and Craiglist.net;

j.   Records of any communication relating to prostitution, including, but not limited to, communications with customers, workers and potential workers;

k.   All address and phone lists or directories; and

l.   Business plans or instructional materials relating to the prostitution business;

all of which constitute evidence, fruits, and instrumentalities of violations of Title 18, United States Code, Sections 1591, 2421, 2423 and 1952.